**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**GABRIEL JESUS MORAN CIFUENTES,**

          Petitioner,

v.

**KEVIN RAYCRAFT**, in his official capacity as
Acting Field Office Director for Detention and
Removal, U.S. Immigration and Customs
Enforcement, Department of Homeland Security,

**NORBAL VASQUEZ**, **in his official capacity as**
Warden, North Lake Processing Center,

**KRISTI NOEM**, in her official capacity as
Secretary, U.S. Department of Homeland
Security;

**PAM BONDI**, in her official capacity as the
Attorney General for the United States

          Respondents.

Case No.

_____/

## PETITION FOR WRIT OF HABEAS CORPUS

**28 U.S.C. § 2241**

**PRELIMINARY STATEMENT**

1.     Petitioner Gabriel Jesus Moran Cifuentes ("Petitioner") is a civil

immigration detainee held by the United States Department of Homeland

Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE"), at the North Lake Processing Center in Baldwin, Michigan.

2.     Petitioner seeks a writ of habeas corpus because the Government is detaining him without any bond hearing or other individualized custody determination by a neutral adjudicator. Petitioner requested custody redetermination before the Immigration Court, but the Immigration Judge issued an order stating the court lacked jurisdiction.

3.  Petitioner does not challenge the merits of his removal proceedings or ask this Court to adjudicate his asylum, withholding of removal, or Convention Against Torture ("CAT") claims. He challenges only the legality and constitutionality of his continuing civil detention.

4.  ICE previously released Petitioner into the United States on parole while his protection-based claims proceeded. Petitioner complied with all conditions of release, lived openly, maintained a stable residence in Detroit, Michigan, and worked to support himself. Under 8 U.S.C. § 1226(a)—which authorizes release on conditional parole or bond pending a decision on removability—Petitioner is entitled to a bond/custody determination. Section 1226(a) expressly governs detention of people who, like Petitioner, are residing in the United States and are detained pending removal proceedings, even where they are charged as inadmissible based on how they initially sought entry or lacked entry documentation. See 8 U.S.C. § 1226(a); Jennings v. Rodriguez, 583 U.S.

281, 288 (2018) (distinguishing § 1225 "arriving" from § 1226 "already in the United States"). Consistent with § 1226(a), DHS and EOIR have for decades provided bond determinations and bond hearings to noncitizens who are living in the United States and detained in the interior pending removal proceedings.

4a. However, Petitioner is being unlawfully detained without bond because ICE and the Immigration Judge have treated him as outside § 1226(a)'s bond framework and instead subject to a mandatory-detention/no-bond regime under a different statutory theory—most commonly 8 U.S.C. § 1225(b)(2)(A) and/or an "arriving alien" custody classification—despite the fact that ICE arrested Petitioner in Michigan, long after he had been living openly, working lawfully with employment authorization, and complying with the process. This statutory move treats an interior resident as perpetually "arriving" and strips him of a neutral bond hearing. This is consistent with DHS/ICE's new detention directive issued July 8, 2025, instructing ICE personnel to stop applying § 1226(a) bond processing to certain categories of inadmissible noncitizens and instead to place them in § 1225(b)(2)(A) mandatory detention without bond regardless of how long they have resided in the United States. The policy states it was issued "in coordination with DOJ," and the Immigration Judge's denial in this case reflects the same legal approach: no bond eligibility, no factual findings—just a jurisdictional bar.

5. On October 24, 2025, ICE violently detained Petitioner and transferred him to the North Lake Processing Center. ICE has taken the position that

Petitioner is detained as an "arriving alien," and therefore not eligible for an Immigration Judge bond/custody redetermination hearing. Consistent with that position, when Petitioner requested custody redetermination pursuant to 8 C.F.R. § 1236, the Immigration Judge declined to exercise jurisdiction, and no bond hearing was held.

6. The manner of Petitioner's re-arrest underscores the severity, and arbitrariness, of the Government's deprivation of liberty without neutral process. On October 24, 2025, at approximately 7:42 a.m., ICE agents executed a sudden dawn home raid at Petitioner's vehicle and residence in Michigan. Petitioner was asleep. He did not resist at any time. Nonetheless, agents forcibly broke into the home, broke windows, and Petitioner suffered an injury to his arm during the seizure. He was abruptly torn from his family and community and placed in civil detention that has continued for months with no bond hearing. (Petitioner does not seek in this habeas action to litigate civil-rights damages; the unlawful and violent nature of the seizure is relevant here because it highlights the lack of any meaningful, neutral check on the Government's asserted "flight risk" narrative and underscores the acute need for a prompt individualized hearing.)

7. Petitioner has deep community ties and the very opposite profile of a flight risk. He has been working lawfully in the Detroit area (with employment authorization) at an automotive assembly plant assembling drivetrains. Members of the clergy have vouched for his character and offered sponsorship

and support. He has stable family ties in Michigan. His continued detention, without any bond hearing, has inflicted serious hardship on his family, including his daughter.

7a. Petitioner sought a bond hearing before an Immigration Judge in the Detroit Immigration Court, but the Immigration Judge declined to exercise jurisdiction and issued a custody order stating the court lacked jurisdiction because Petitioner is an "arriving alien." The Immigration Judge made no factual findings that Petitioner is a flight risk or danger. Instead, the Immigration Judge concluded that notwithstanding Petitioner's residence and lawful employment in Michigan, he is legally ineligible for bond and therefore must remain detained. Respondents' legal interpretation—causing Petitioner to be detained without bond—is contrary to the statutory framework of the INA and contrary to regulations and decades of consistent agency practice applying § 1226(a) to interior detainees in pending removal proceedings. It also violates due process by depriving Petitioner of liberty without any neutral determination of whether detention is warranted. Petitioner is not challenging any discretionary denial of bond; he is challenging the legal determination that he is not eligible for bond under § 1226(a) in the first place, which has resulted in months of detention without a bond hearing.

8. Petitioner fled Colombia after being targeted by the criminal organization Tren de Aragua. As reflected in his protection filings, Petitioner and his family were threatened and extorted, and his daughter suffered severe violence at the

hands of that criminal organization. Petitioner fears further harm and torture if returned. These facts are not offered to ask this Court to adjudicate the asylum merits. They underscore (a) the seriousness of Petitioner's incentive to pursue his protection claim through the lawful process rather than abscond, and (b) the acute family hardship caused by his ongoing detention.

9.   That posture is unlawful. The INA draws a clear line between detention authority for noncitizens who are "arriving in the United States" (8 U.S.C. § 1225) and those who are "already in the United States" and detained pending removal proceedings (8 U.S.C. § 1226). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). When § 1226(a) applies, Congress and the implementing regulations provide for a bond hearing before an IJ. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(d)(1).

10.   Michigan federal courts, within both the Western and Eastern Districts, have repeatedly rejected the Government's attempt to deny bond hearings by invoking § 1225(b)(2)(A) for noncitizens who were already living in the United States when ICE arrested them. See, e.g., *Kazi Masud v. Raycraft*, No. 1:26-cv-33, slip op. at 3 (W.D. Mich. Jan. 23, 2026) (ordering § 1226(a) bond hearing); *Otto Armano Arevalo-Vasquez v. Raycraft*, No. 1:26-cv-21, slip op. at 3 (W.D. Mich. Jan. 21, 2026) (same); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025) ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs detention of noncitizens 'already in the country.'").

11. Those decisions do not merely "assume" a bond hearing should exist; they explain why the Government's reading would collapse Congress's two distinct detention regimes, treat interior residents as perpetually "arriving," and nullify the bond framework Congress and the regulations established for § 1226(a). See, e.g., *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *3–6 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *4–6 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *4–7 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *3–6 (W.D. Mich. Dec. 12, 2025). See also *Pizarro Reyes v. Raycraft*, No. 2:25-cv-12414, 2025 WL 2609425, at *4–7 (E.D. Mich. Sept. 9, 2025) (ordering § 1226(a) bond hearing where petitioner lived in Michigan before ICE arrest).

12. Nationally, federal courts have likewise rejected DHS's effort to expand mandatory detention under § 1225(b)(2)(A) to people already residing inside the country, including through classwide relief. See *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *6–12 (C.D. Cal. Nov. 25, 2025) (classwide relief addressing DHS's use of § 1225(b)(2) to deny § 1226 bond process). While not binding, *Maldonado Bautista* is persuasive on the statutory structure and reinforces the consensus that the Government cannot use § 1225(b)(2) as an end-run

around § 1226(a)'s custody redetermination framework for people living in the interior.

13. Even if ICE could invoke a mandatory detention framework in Petitioner's case, due process requires more than a discretionary parole review: it requires a prompt, individualized hearing before a neutral decisionmaker at which the Government justifies continued detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Indeed, courts in this District have held that detention under § 1225(b)(2)(A) without a neutral, individualized hearing violates due process and have ordered prompt § 1226(a) bond hearings with the Government bearing the burden. See, e.g., *Soto-Medina v. Lynch*, No. 1:25-cv-1704, slip op. at 20–21 (W.D. Mich. Jan. 21, 2026); *Kazi Masud*, slip op. at 3–4; *Arevalo-Vasquez*, slip op. at 3–4.

14. Petitioner therefore respectfully requests that this Court issue the writ and order ICE to (a) release Petitioner, or (b) provide Petitioner with a prompt individualized bond hearing under § 1226(a) before a neutral adjudicator, at which the Government bears the burden to justify continued detention.

## JURISDICTION, VENUE, AND CUSTODY

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 because Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question) and Article I, § 9, cl. 2 of the United

States Constitution (Suspension Clause). The Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

16. Federal habeas jurisdiction extends to challenges by noncitizens to the legality and constitutionality of their immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *INS v. St. Cyr*, 533 U.S. 289, 305–08 (2001).

17. The REAL ID Act of 2005 does not strip district courts of jurisdiction over challenges to immigration detention that do not seek review of a final order of removal. See 8 U.S.C. § 1252(a)(5), (b)(9); *Zadvydas*, 533 U.S. at 687.

18. The jurisdictional bars in 8 U.S.C. §§ 1226(e) and 1252(g) do not preclude review of the legal question presented here—whether the Government is detaining Petitioner under the correct statutory authority—and do not preclude review of Petitioner's constitutional claims. *Jennings*, 583 U.S. at 293; *Kazi Masud*, slip op. at 1–3.

19. Venue is proper in this jurisdiction because Petitioner is being held under the authority of the Field Office Director of ICE Enforcement and Removal Operations ("ERO") for the Detroit Field Office in the Eastern District of Michigan . 28 U.S.C. § 2241(a); *Padilla*, 542 U.S. at 442–43. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 2241 and 28 U.S.C. § 1391 because Petitioner is detained at the direction of, and subject to custodial authority exercised by, Respondent Raycraft as Acting Field Office Director for

ERO Detroit. See Roman v. Ashcroft, 340 F.3d 314, 320–21 (6th Cir. 2003). Venue is also proper under 28 U.S.C. § 1391(e) because Respondents are officers/agencies of the United States and because a substantial part of the events or omissions giving rise to these claims occurred in this District.

PARTIES

21.  Petitioner Gabriel Jesus Moran Cifuentes is a native and citizen of Colombia. He is currently detained by ICE at the North Lake Processing Center in Baldwin, Michigan.

22.  Respondent Norbal Vasquez is the Warden of the North Lake Processing Center and is the immediate custodian of Petitioner.

23.  Respondent Kevin Raycraft is the Field Office Director of ICE Enforcement and Removal Operations ("ERO") for the Detroit Field Office. He has authority over immigration detention decisions for ICE detainees in Michigan, including Petitioner.

24.  Respondent Kristi Noem is the Secretary of DHS. She is responsible for the administration and enforcement of the INA, including ICE detention policies and practices.

25.  Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the administration of the immigration courts and for the Government's litigation position regarding detention authority.

25a. As Secretary of DHS, Respondent Noem exercises ultimate supervisory authority over DHS components, including ICE, and is responsible for DHS detention policy, custody classifications, and implementation of detention directives at issue in this Petition. She is named solely in her official capacity for declaratory and injunctive relief to ensure any writ or order binds an official with authority to effectuate release and to prevent transfer designed to evade this Court's jurisdiction.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. There is no statutory exhaustion requirement for a habeas petition under 28 U.S.C. § 2241 challenging the legality of immigration detention. Any exhaustion requirement is prudential and may be waived. See *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

27. Sixth Circuit authority recognizes that exhaustion requirements not written into the text of a statute are prudential and within the Court's discretion. See *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994); *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

28. Prudential exhaustion should be waived here because: (a) Petitioner raises pure questions of law regarding the Government's detention authority and the constitutional minimum required by due process; (b) requiring further administrative proceedings would be futile because, after Petitioner sought custody redetermination, the Immigration Judge entered an order stating the

Immigration Court lacks jurisdiction on the ground that Petitioner is an arriving alien, foreclosing an IJ bond/custody redetermination hearing; (c) the Board of Immigration Appeals lacks authority to decide Petitioner's constitutional claims; and (d) continued detention without a bond hearing inflicts ongoing, irreparable deprivation of liberty. See *Kazi Masud*, slip op. at 2 (declining to enforce prudential exhaustion); *Arevalo-Vasquez*, slip op. at 2 (same).

29.  Petitioner has, in any event, pursued the only administrative process the Government has made available. He sought parole and later submitted a written request for redetermination of the parole denial, supported by extensive documentation.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   Petitioner's life in Michigan on parole and employment authorization

30.  Petitioner entered the United States and expressed a fear of return to Colombia after being targeted by the criminal organization Tren de Aragua.

31.  An asylum officer determined that Petitioner established a credible fear of persecution or torture, and Petitioner was placed into removal proceedings to pursue asylum, withholding of removal, and CAT protection.

32.  ICE exercised its discretionary authority to parole Petitioner into the United States while his proceedings continued.

33. While on parole, Petitioner complied with all immigration reporting requirements, maintained a stable residence in Detroit, Michigan, and worked to support himself. Petitioner has been employed at an automotive assembly plant in the Detroit area, assembling drivetrains. Petitioner's employment was lawful and supported by employment authorization.

34. Petitioner is a person of faith and has deep ties to the church community. Clergy members have vouched for his good character and have offered to sponsor him and assist with housing and support upon release.

B.    The October 2, 2025 home raid and re-detention in the interior

35. In or about October 2025, ICE re-detained Petitioner and transferred him to the North Lake Processing Center, where he remains confined.

36. Petitioner's re-arrest occurred outside his home in Michigan, long after he had been living openly, working, and complying with conditions of release. At the time of his arrest, Petitioner was not detained at any port of entry, during inspection, or while "arriving."

37. ICE agents executed the re-arrest with overwhelming force. On October 24, 2025, at approximately 7:42 a.m., agents forcibly entered Petitioner's home, broke windows, and Petitioner suffered an arm injury during the seizure from his car, even though he did not knowingly resist at any time. Petitioner was taken from his family and community and transported into ICE custody.

C.   Parole denial and the Immigration Judge's refusal to hold a bond hearing

38.   On December 23, 2025, ICE issued a written decision denying parole, asserting that Petitioner had not established that he was not a flight risk and raising concerns about his identity.

39.   After ICE re-detained Petitioner, Petitioner requested custody redetermination before the Immigration Court pursuant to 8 C.F.R. § 1236. On January 2, 2026, the Immigration Judge issued an order stating that the Immigration Court lacks jurisdiction because Petitioner is an arriving alien. Accordingly, Petitioner has not received an IJ bond hearing or merits-based custody redetermination.

40.   ICE's denial letter invited Petitioner to request redetermination based on changed circumstances or additional evidence.

41.   On January 27, 2026, Petitioner submitted a written request for redetermination supported by extensive documentation, including evidence of stable housing, community ties, compliance, identity verification, and the merits-based posture of his immigration case.

42.   Petitioner has filed Form I-589, Application for Asylum and for Withholding of Removal, which remains pending before the Immigration Court.

43. Petitioner has not received a bond hearing or merits-based custody redetermination before an Immigration Judge or other neutral adjudicator; instead, the Immigration Judge declined to exercise jurisdiction to conduct custody redetermination because DHS treats Petitioner as an arriving alien.

44. Petitioner's detention is open-ended and potentially lengthy given the pending litigation of his protection claims and any appeals that may follow. As of February 2026, Petitioner has been held since October 24, 2025—about four months—without any bond hearing.

## LEGAL STANDARD

45. Immigration detention is civil, not criminal, and is permissible only when it is reasonably related to the Government's legitimate regulatory interests— primarily ensuring appearance at proceedings and protecting the community. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527–28 (2003).

46. The Supreme Court has emphasized that, where detention is authorized, it must be tethered to the purposes that justify it, and due process limits detention that is arbitrary or imposed without meaningful procedural safeguards. *Zadvydas*, 533 U.S. at 690–91; *Mathews*, 424 U.S. at 335.

## CLAIMS FOR RELIEF

## COUNT I — UNLAWFUL DETENTION UNDER THE INA (8 U.S.C. § 1226(a))

47. Petitioner re-alleges and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48. The INA establishes distinct detention regimes. Section 1225 governs inspection and detention of noncitizens who are arriving and being screened for admission. Section 1226 governs detention of noncitizens who are already in the United States and are detained "pending a decision on whether

the alien is to be removed." 8 U.S.C. § 1226(a).

49. The Supreme Court has recognized this statutory divide: Section 1225 concerns noncitizens "arriving in the United States," while Section 1226 concerns noncitizens "already in the United States." *Jennings*, 583 U.S. at 288.

50. Petitioner was re-detained in the interior of the United States after having been released on parole. At the time of arrest, he was not detained at a port of entry, during inspection, or while "arriving" to the country. Under these circumstances, § 1225(b)(2)(A) cannot supply detention authority. See *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025)

51. Multiple courts have explained why DHS's interpretation of § 1225(b)(2)(A) as a perpetual, interior detention authority is inconsistent with the statutory structure. The very text and context of § 1225 address inspection and admission—i.e., conduct that occurs at the border or port of entry—whereas § 1226 addresses detention pending removal proceedings for people already inside the country. See,e.g., *Kazi Masud,* slip op. at 3–4; *Arevalo-Vasquez*, slip

op. at 3–4; *Cobix*, 2025 WL 3562651, at *3–6; *Penagos Robles*, 2025 WL 3558128, at *3–6.

52. Construing § 1225(b)(2) to apply to individuals living in the interior would collapse Congress's deliberate separation of detention regimes and effectively nullify § 1226(a)'s custody redetermination framework for a large class of noncitizens in removal proceedings. Courts in Michigan have rejected that result as contrary to the statutory scheme. See *Cobix*, 2025 WL 3562651, at *3–6; *Candela Bastidas*, 2025 WL 3562638, at *4–6; *Acuna Sanchez*, 2025 WL 3562577, at *4–7; *Penagos Robles*, 2025 WL 3558128, at *3–6; *Pizarro Reyes*, 2025 WL 2609425, at *4–7; *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025).

53. Section 1226(a) therefore governs Petitioner's detention. Under § 1226(a), ICE may detain Petitioner pending removal proceedings, but it must also provide access to a custody redetermination process, including an IJ bond hearing. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(d)(1).

54. The Sixth Circuit has recognized that detention under § 1226(a) carries a regulatory entitlement to an IJ bond hearing. See *Martinez v. Larose*, 968 F.3d 555, 557 (6th Cir. 2020) (explaining that § 1226(a) detainees are entitled to bond hearings under the regulations).

55. By detaining Petitioner under an "arriving alien" framework that, in practice, forecloses an IJ bond hearing—and by limiting Petitioner to

discretionary parole review by ICE (with the Immigration Judge stating the court lacks jurisdiction to conduct custody redetermination on that basis)— Respondents are acting contrary to the INA and its implementing regulations.

56.  Courts in this District have granted habeas relief and ordered § 1226(a) bond hearings in materially similar circumstances. See *Kazi Masud*, slip op. at 3–4; *Arevalo-Vasquez*, slip op. at 3–4.

57.  Persuasive authority from outside this Circuit further confirms that DHS's effort to use § 1225(b)(2) as a mechanism to deny § 1226 bond hearings to interior residents is unlawful. See *Maldonado Bautista*, 2025 WL 3289861, at *8–12; *Maldonado Bautista*, 2025 WL 3288403, at *6–12.

## COUNT II — FIFTH AMENDMENT VIOLATION OF DUE PROCESS (PROCEDURAL AND SUBSTANTIVE)

58.  Petitioner re-alleges and incorporates by reference paragraphs 1 through 57 as if fully set forth herein.

59.  The Due Process Clause applies to all "persons" within the United States, including noncitizens. *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Zadvydas*, 533 U.S. at 693.

60.  Under *Mathews v. Eldridge*, procedural due process requires the Court to weigh: (1) the private interest affected; (2) the risk of erroneous deprivation under the existing procedures and the probable value of additional safeguards;

and (3) the Government's interest, including fiscal and administrative burdens. 424 U.S. at 335.

61. Petitioner's private interest, which is freedom from physical restraint, is fundamental. The risk of erroneous deprivation is substantial where detention turns on untested allegations of flight risk or identity concerns and the only process available is discretionary parole review conducted by the detaining agency.

62. A bond hearing before a neutral adjudicator dramatically reduces the risk of error by requiring evidence-based findings on danger and flight risk and by allowing consideration of less restrictive alternatives to detention. The Government's countervailing interest is limited to ensuring appearance and community safety, and those interests can be served through conditions of release in appropriate cases.

63. Due process therefore requires, at a minimum, a prompt individualized hearing at which the Government must justify continued detention. In analogous civil-detention contexts, the Supreme Court has required the Government to carry the burden of proof by at least clear and convincing evidence. See *Addington v. Texas*, 441 U.S. 418, 431–33 (1979); *United States v. Salerno*, 481 U.S. 739, 750 (1987).

64. Courts in this District have held that detention under a mandatory-detention framework without an IJ bond hearing violates due process and have

ordered a § 1226(a) bond hearing. See *Kazi Masud*, slip op. at 3–4; *Arevalo-Vasquez*, slip op. at 3–4; *Soto-Medina v. Lynch*, No. 1:25-cv-1704, slip op. a20–21 (W.D. Mich. Jan. 21, 2026).

65. Petitioner re-alleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66. Petitioner has not received a bond hearing or any neutral, individualized custody determination. When Petitioner sought custody redetermination in Immigration Court, the Immigration Judge declined to exercise jurisdiction to hold a bond hearing, leaving Petitioner with only discretionary parole review by ICE. Civil immigration detention—though civil in form—remains a severe deprivation of liberty. Freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

67. Where the Government seeks to justify continued physical confinement in a civil proceeding, due process requires the Government to bear the burden and to prove the need for confinement by clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 427, 431–33 (1979); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); U*nited States v. Salerno*, 481 U.S. 739, 751 (1987).

68. Consistent with these principles, courts in this District have required that, at a § 1226(a) bond hearing ordered as habeas relief, the Government bears the burden to establish by clear and convincing evidence that the detained

person is a danger to the community or a flight risk—and that no less restrictive conditions of release can reasonably mitigate any such risk. See *Soto-Medina v. Lynch*, No. 1:25-cv-1704, slip op. at 8–18 (W.D. Mich. Jan. 21, 2026).

69. Petitioner's case illustrates the heightened risk of erroneous deprivation when the Government's position forecloses any neutral hearing. ICE's "parole" denials are discretionary, opaque, and decided by the detaining agency itself; they are no substitute for an adversarial custody determination by a neutral decisionmaker. Petitioner has now been detained since October 2, 2025, without any bond hearing, despite his lawful employment authorization, stable housing and family ties, and extensive community support—including multiple clergy sponsors willing to supervise and support him.

70. Accordingly, if this Court orders a § 1226(a) bond hearing, due process requires these procedural safeguards. Absent such a hearing, Petitioner's continued detention violates the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Issue an Order to Show Cause directing Respondents to answer this Petition promptly, as contemplated by 28 U.S.C. § 2243;

B.   Declare that Petitioner's detention is governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b);

C.   Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately unless Respondents provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five (5) business days;

D.   Order that, at the bond hearing, the Government bears the burden to prove by clear and convincing evidence that continued detention is necessary because Petitioner poses a danger to the community or a risk of flight, and that no less restrictive conditions can reasonably address those interests;

E.    Enjoin Respondents from transferring Petitioner outside the Western District of Michigan while this Petition is pending, absent prior notice to counsel and leave of Court;

F.    Order Respondents to file a status report within six (6) business days certifying compliance with any order of this Court; and

G.   Grant such other and further relief as the Court deems just and proper.

Dated: February 17, 2026

Respectfully submitted,

Shawn Desai

Shawn L. Desai, Managing Attorney
Desai Legal Services PLLC
*Attorney for Petitioner*
6450 Farmington Rd., Ste. 105,
West Bloomfield, Michigan 48322

Cell: (810)-355-6134
Shawn@DesaiLegalServices.com